UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RUBEN S. CISTERNA,

                    Petitioner,

vs.                              Case No.  2:10-cv-614-FtM-29UAM

SECRETARY, DOC and FLORIDA ATTORNEY
GENERAL,

                    Respondents.
_____

## OPINION AND ORDER

Ruben S. Cisterna, a prisoner serving a life sentence in the custody of the Secretary of the Florida Department of Corrections, initiated this action pro se by filing a "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus" (Doc. #1, Petition) and attached exhibits (Doc. #1-1, Pet.'s Exhs. A-D) on October 10, 2010.[1]  The Petition challenges the State circuit court's decision to dismiss as untimely Petitioner's petition for writ of mandamus, which challenged a prison disciplinary committee's decision finding Petitioner guilty of a disciplinary infraction.  The circuit court found the petition for writ of mandamus untimely pursuant to the Florida law requirement

_____

[1]Although filed as a section 2254 Petition, the Petition is properly characterized as filed pursuant to section 2241. Medberry v. Crosby, 351 F.3d 1049, 1053 (11th Cir. 2003).  Because Petitioner is also in custody pursuant to an order from the State court, he is subject to additional restrictions of section 2254. Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, n.1 (11th Cir. 2011)(unpublished).  This Court is the proper venue for a section 2241 petition due to Petitioner's incarceration at Desoto Correctional Institution at the time he initiated the action.  See Petition at 1.

that a petition challenging a prison disciplinary proceeding must be filed within thirty days from the date of the decision denying an inmate's administrative grievance. See generally Petition. The First District Court of Appeal affirmed the circuit court's decision. Id. at 6. Petitioner argues that the State courts committed an error by dismissing his State mandamus petition as untimely without requiring the Respondent to prove when Petitioner received a copy of the response denying his inmate grievance. Petition at 5. According to the Petition, as a result of the alleged false disciplinary report, Petitioner lost 15 days of gain time and was given 15 days of probation. Id. at 1. As relief, Petitioner seeks an order remanding this case to the First District Court of Appeal with instructions to treat the Petitioner's writ of mandamus as timely. Id. at 8.

Respondents filed a Response opposing the Petition (Doc. #12, Response) and attach supporting exhibits (Doc. #12-1, Resp. Exhs. A-K). Respondents assert that the Petition fails to present a federal issue for this Court's review because Petitioner did not lose gain time as a result of the guilty disciplinary finding. Response at 1, 6-7. Contrary to the factual allegations in the Petition, Respondents note that Petitioner only served 15 days on administrative confinement and lost 15 days of probation. Id. at 7 (citing Resp. Exh. C). Consequently, Respondents argue that the Due Process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974) and Sandin v. Conner, 515 U.S. 472 (1995) were not triggered based on Petitioner's 15 day

-2-

placement in administrative confinement and 15 days of probation.  Id. (citing Hewitt v. Helms, 459 U.S. 460, 466 (1983)(holding that an inmate has no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement); Rogers v. Singletary, 142 F.3d 1252 (11th Cir. 1998)(finding that inmate Rogers failed to show deprivation of a protected liberty interest where the inmate was in segregated confinement for two months); Sealy v. Giltner, 197 F.3d 578 (2d Cir. 1999)(stating that 101-day disciplinary confinement did not meet the Sandin standard of atypicality).  Respondents also contend that the State courts' decision to dismiss Petitioner's state mandamus petition as untimely was resolved on an adequate and independent State ground, and is entitled to this Court's deference pursuant to the law governing habeas corpus petitions.  Id. at 8-10.  Finally, Respondents suggest that this Court should recommend sanctions, pursuant to Florida Statute § 944.279, against Petitioner for falsely submitting under oath that he lost gain time as a result of the false disciplinary report.  Id.

     In Reply, Petitioner raises arguments that he did not raise in the Petition concerning the deprivation of his Due Process rights stemming from the disciplinary report hearing.  See generally Reply at 1-4.  In fact, the arguments Petitioner raises in his Reply were not even raised in his inmate grievances challenging the guilty finding of the disciplinary team.  See Doc. #1-1.  Petitioner maintains his

challenge to the State courts' dismissal of his petition for writ of mandamus as untimely and blames prison officials for failing to provide him a timely copy of the response denying his inmate grievance. Reply at 8-9. Finally, Petitioner concedes that he did not lose any gain time, but contends that he mistakenly wrote that he did on the Petition and requests that the Court not impose sanctions. Id. at 10.

**FACTUAL HISTORY AND PROCEDURAL BACKGROUND**

<u>Administrative Proceedings</u>

Petitioner is serving a life sentence in the custody of the Secretary of the Department of Corrections for first degree pre-mediated murder. Resp. Exh. A.  On May 20, 2008, while confined at Desoto Correctional Annex, Petitioner was issued a disciplinary report for disobeying an institutional regulation regarding the number of articles of laundry an inmate can possess. Fla. Admin. Code R. 33-601.314 (6-2); Pet. Exh. A, Resp. Exh. C.  The disciplinary report (hereinafter "DR") read as follows:

> ON MAY 20, 2008, AT APPROXIMATELY 7:15AM, I, OFFICER BERRY
> ASSIGNED TO LAUNDRY RECEIVED CLOTHING FROM INMATE CISTERNA,
> RUEBEN 099799.   THE OFFICER IN H-DORMITORY SENT IN
> CISTERNA'S CLOTHING TO LAUNDRY TO BE INVENTORIED THEN SENT
> TO CONFINEMENT.   INMATE CISTERNA HAD THE FOLLOWING EXTRA
> LAUNDRY.  1 PANTS, 2 BLUE SHIRTS, 1 SHEET, 1 PILLOWCASE, 4
> T-SHIRTS, 5 PR SOCKS, 3 TOWELS, 2 WASHCLOTHS, 3 LAUNDRY
> BAGS, 2 BLANKETS, 1 BELT, 2 HATS AND 1 PR. BOOTS.  DUE TO
> INMATE   CISTERNA   DISOBEYING   INSTITUTIONAL   RULES   AND
> REGULATIONS BY HAVING THE ABOVE EXCESS AMOUNT OF STATE
> CLOTHING  THIS  DISCIPLINARY  REPORT  WAS  WRITTEN.    INMATE
> CISTERNA IS PRESENTLY IN ADMINISTRATIVE CONFINEMENT PENDING
> DISPOSITION OF THIS DISCIPLINARY REPORT.

Pet. Exh. A; Resp. Exh. C.   Petitioner received notice of the DR on May 20, 2008.   Resp. Exh. C at 11, 13.

An investigation into the charge was initiated on May 20, 2008. Id. at 12-13.   During the investigation, Petitioner declined staff assistance.   Id. at 13.   Both Petitioner and the charging staff member, officer Berry, were interviewed.   Id. at 13-14; see also Exh. D at 14.   Officer Berry stated that the statement of facts as written in the DR were true and correct.   Exh. C. at 13-14.   Petitioner was given an opportunity to present written witness statements and to name witnesses in his defense, but did not have any.   Exh. E at 15. Petitioner was given an opportunity to introduce documentary and physical evidence, but instead checked that he had no evidence.   Id. at 16.   Petitioner failed to sign the witness disposition form.   Id. As the instructions on the witness disposition form set forth, an inmate who refuses to sign the form waives the opportunity to present physical or documentary evidence at he hearing.   Id. at 15.

The disciplinary committee held the disciplinary hearing on May 27, 2008. Exh. B at 18.   Petitioner was present and plead not guilty. Id.   The disciplinary committee determined Petitioner was guilty of the DR infraction and found as follows:

> BASED ON ON [sic] MAY 20, 2008, AT APPROXIMATELY 7:15AM ON
> MAY 20, 2008, AT APPROXIMATELY 7:15AM, I, OFFICER BERRY
> ASSIGNED TO LAUNDRY RECEIVED CLOTHING FROM INMATE CISTERNA,
> RUEBEN 099799.   THE OFFICER IN H-DORMITORY SENT IN
> CISTERNA'S CLOTHING TO LAUNDRY TO BE INVENTORIED THEN SENT
> TO CONFINEMENT.   INMATE CISTERNA HAD THE FOLLOWING EXTRA
> LAUNDRY.   1 PANTS, 2 BLUE SHIRTS, 1 SHEET, 1 PILLOWCASE, 4
> T-SHIRTS, 5 PR SOCKS, 3 TOWELS, 2 WASHCLOTHS, 3 LAUNDRY

-5-

BAGS, 2 BLANKETS, 1 BELT, 2 HATS AND 1 PR. BOOTS.  DUE TO INMATE CISTERNA DISOBEYING INSTITUTIONAL RULES AND REGULATIONS BY HAVING THE ABOVE EXCESS AMOUNT OF STATE CLOTHING THIS DISCIPLINARY REPORT WAS WRITTEN.    INMATE CISTERNA IS PRESENTLY IN ADMINISTRATIVE CONFINEMENT PENDING DISPOSITION OF THIS DISCIPLINARY REPORT.

Exh. B at 18.  As a result of the disciplinary committee's decision, Petitioner was assigned to 15 days disciplinary confinement and given 15 days probation.  Id.

On May 31, 2008, Petitioner submitted a grievance at the institutional level, log number 0806-508-008.[2]  Resp. Exh. D at 21; see also Pet. Exh. C.  A June 18, 2008 response denied Petitioner's grievance.[3]  Resp. Exh. D at 22.  On June 30, 2008, Petitioner appealed the institutional level response by filing a grievance,  log number 08-06-18766, with the Bureau of Inmate Appeals.  Resp. Exh. D at 19;

---

[2]On the inmate grievance, Petitioner alleged his due process rights were violated because the disciplinary hearing team did not rely on "component substantial evidence" to support its guilty finding.  See Resp. Exh. D at 21; Pet. Exh. C.  Petitioner recited a portion of officer Berry's version of the facts, as set forth on the disciplinary report, but specifically took issue with the fact that none of the excessive laundry was preserved or photographed to be introduced as evidence.  Id.  Petitioner also claimed that he actually had a "shortage" of the proper "issue[d] amount."  Id.

[3]Correctional officials denied Petitioner's inmate grievance writing as follows:

Your appeal has misrepresented what the statement of facts states.  It states you had the follow extra clothing which is then enumerated piece by piece.  By having the extra laundry items you were in violation of charge (6-2), disobeying institutional rules and regulations. Therefore, your appeal is denied . . . . .

Pet. Exh. D.  A July 30, 2008 response denied Petitioner's appeal.[4]

Resp. Exh. D at 20;  Pet. Exh. D at 3.  The response was mailed to

Petitioner on August 1, 2008.  See Exh. D at 93 (date stamped as

mailed by agency clerk on Aug. 1, 2008).

Court Proceedings

On November 4, 2008, Petitioner handed to prison officials a

state petition for writ of mandamus for filing with the state circuit

court.[5]  Resp. Exh. E at 23.  Respondents filed a response to the

petition on December 17, 2008.  Resp. Exh. F.  Respondents argued that

Petitioner's petition for writ of mandamus was untimely because it was

---

[4]Correctional officials denied Petitioner's appeal writing as
follows:

> Your administrative appeal has been reviewed and
> evaluated.  The response you received at the
> institutional level has been reviewed and is found to
> appropriately address the concerns that you raised at the
> institutional level as well as the Central Office level.
> You have not presented sufficient evidence or information
> to warrant overturning the disciplinary report.  In
> addition, the institution was contacted and stated you
> requested no evidence.  Your administrative appeal is
> denied.

[5]In the petition for writ of mandamus, Petitioner argued that
the disciplinary hearing team violated his due process rights by
not providing him with written findings as to what evidence they
relied upon to find him guilty. Resp. Exh. E at 25, 29, 32.
Petitioner also argued that competent substantial evidence did
not support the committee's guilty finding because officer Berry
committed fraud and her testimony constituted hearsay. Id. at 27.
Petitioner asserted for the first time that an inmate, a laundry
orderly, picked up Petitioner's laundry. Id. at 27. Petitioner
noted a perceived discrepancy in the statement of facts as to how
officer Berry received Petitioner's laundry, and that he was
already in disciplinary confinement prior to the issuance of the DR
based on another infraction, not as a result of the DR. Id. at 32.

not filed within the 30 day time period required to challenge a prison disciplinary proceeding.  Id.  The circuit court dismissed Petitioner's petition as untimely.  See Resp. Exh. G.

Petitioner pursued an appeal with the First District Court of Appeal.  Resp. Exh. H.  Respondents filed an Answer.  Resp. Exh. I. The appellate court per curiam affirmed the lower court's decision on August 24, 2009.  Resp. Exh. J.

On September 29, 2010, Petitioner filed the instant petition. See docket.

## Standard of Review

### A.  28 U.S.C. § 2254 and Disciplinary Proceedings

A state prisoner who is deprived of gain time as a result of a prison disciplinary proceeding that allegedly violated due process may seek federal habeas review, but such review is governed by restrictions set forth under 28 U.S.C. § 2254.  Medberry, 351 F.3d at 1054.  Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).  "This is a difficult to meet, and highly

-8-

deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in

the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. Id. (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to

-10-

reviewing only the record that was before the state court at the time it rendered its order.   Id.

The Court recognizes that prison disciplinary proceedings are not part of a criminal prosecution, and therefore the full panoply of rights that are due a defendant in a criminal proceeding does not apply.   Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted).   "In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."   Id.

In Wolff, the United States Supreme Court held that when a liberty interest is at stake "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."   Id. at 564.   Further, the Court held that "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]."   Id.   The Court further explained "there must be a 'written statement by the fact finders as to the evidence relied on and reasons' for the disciplinary action."   Id.   (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).

The Court also noted "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."   Id. at 566.   The Court explained its concern for institutional safety:

> Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinary difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

Id. at 566-567.

An inmate facing a disciplinary charge, however, has no constitutional right to confrontation and cross-examination of

-12-

witnesses furnishing evidence against him at the disciplinary hearing. Id. at 567.  The Court left this matter to the sound discretion of the officials of the state prisons.  Id. at 569.  Finally, the disciplinary hearing committee must be sufficiently impartial in that it must not present "a hazard of arbitrary decision making."  Id. at 571.

When no protected liberty interest is at stake, these procedures do not apply.  In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.  The Court determined that a prisoner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  Id. at 486-487; see also Rogers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998)(concluding two months in administrative confinement did not constitute deprivation of a protected liberty interest); Matthews v. Moss, 506 F. App'x 981, 983 (11th Cir. 2013)(unpublished)(affirming district court's decision dismissing a plaintiff's procedural due process claim because the complaint did not allege a deprivation of a protected liberty interest and noting that the complaint did not allege any facts showing that

the inmate was confined in harsher conditions than inmates in administrative confinement).

**B.  Section 2254's Exhaustion Requirement**

A petitioner, when asserting grounds that warrant review by a federal court under § 2254, must have first raised such grounds before the state courts, thereby giving the state courts the initial opportunity to address the federal issues.  A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State. . . . ."  28 U.S.C. § 2254(b)(1)(A).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Duncan v. Henry, 513 U.S. 364, 365-66 (1995). "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  See also Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003), cert. denied, sub nom. Pruitt v. Hooks, 543 U.S. 838 (2004).  To properly exhaust a claim, a petitioner must present the *same* claim to the state court that he urges the federal court to consider.  A mere citation to the federal constitution is insufficient

-14-

for purposes of exhaustion. <u>Anderson v. Harless</u>, 459 U.S. 4, 7 (1983). "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting <u>Kelley v. Sec'y for the Dep't of Corr.</u>, 377 F.3d 1317, 1343-44 (11th Cir. 2004)). Pursuant to Florida law, any claims Petitioner wished to pursue pertaining to the alleged false disciplinary report should have been filed by a petition for writ of mandamus in the Florida courts. <u>Bush v. State</u>, 945 So. 2d 1207, 1210 (Fla. 2006).

**ANALYSIS**

**<u>Petitioner's Challenge to the State courts' orders</u>**

Here, the Petition primarily raises an issue with the State court's dismissal of his state petition for writ of mandamus as untimely. The appellate court *per curiam* affirmed the circuit court's decision. Specifically, Petitioner argues that the State courts improperly determined that his petition was untimely because they did not make Respondents prove when Petitioner received a copy of the response denying his inmate grievance. Petitioner baldly claims that he did not receive a copy of the response denying his grievance until four months after the date it was stamped as mailed. <u>See</u> Petition at 5. Petitioner provides no evidence to substantiate his assertion that he received the response denying his inmate grievance four months later.

-15-

This claim is not cognizable in a § 2254 petition because it fails to raise a federal issue. Machin v. Wainwright, 758 F.2d 1431, 1433 (11th Cir. 1985)(it is well settled that matters of pure state law are not cognizable in a federal habeas corpus proceeding). Federal habeas corpus is available for vindication of rights existing under federal constitutional law, and not rights existing solely under state rules of criminal procedure. Accordingly, a state's interpretation of its own rules or statutes does not raise a federal constitutional issue unless it rises to a level of a denial of fundamental due process. Redman v. Dugger, 866 F.2d 387 (11th Cir. 1989); Machin; 758 F.2d at 1433; Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983). Even when a petition, which actually involves state law issues, is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. Id. at 1508 (quoting Willeford v. Estelle, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure. Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. Unit B. 1981).

The State court dismissed Petitioner's petition for writ of mandamus as untimely pursuant to Florida Statute 95.11(8) and Florida Rule of Appellate Procedure 9.100(c)(4). In pertinent part, the circuit court found:

> The final appeal grievance response from the Office of the Secretary of the Department was mailed to the petitioner and filed with the agency clerk **on August 1, 2008.** (Resp. Ex. I).

> Pursuant to Rule 33-103.007(8), Florida
> Administrative Code, the "period for appeal begins
> to run on the date that the response is stamped
> and mailed."  The period for challenging the
> disciplinary action is 30 days.  Fla. R. App. P.
> 9.100(c)(4); § 95.11(8), Fla. Stat.  The
> timeliness of an inmate petition challenging a
> prisoner disciplinary proceeding depends on the
> date of rendition of the order constituting final
> disposition of the inmate's grievances concerning
> the proceeding.  Ortiz v. Moore, 741 So.2d 1153
> (Fla. 1st DCA 1999).  The date of rendition of the
> order constituting final disposition is the date
> the written order is filed with the clerk of the
> lower tribunal.  Id. at 1154.  The petitioner's
> Petition was given to prison officials for mailing
> **on November 14, 2008,** more than 30 days from the
> final disposition at the administrative level.
> Therefore, the petition is untimely and must be
> dismissed.  See Kalway v. Singletary, 708 So.2d
> 267 (Fla. 1998).

Resp. Exh. G at 63-64 (emphasis added).

The State court's order rests on Florida law.  The record shows that the response denying Petitioner's inmate grievance was clearly stamped as mailed on August 1, 2008.  Petitioner presented no evidence to show otherwise before the State court.  Consequently, the Court dismisses the Petition because Petitioner only seeks relief based on a perceived error by the State courts.  A claimed violation of state law is insufficient to warrant review or relief by a federal court under § 2254.  Pulley v. Harris, 465 U.S. at 41.

**Due Process Claim**

Liberally construing the Petition as raising a due process claim stemming from the disciplinary hearing, the Court finds the Petition fails to state a claim.  As a result of the disciplinary committee's

-17-

guilty finding, Petitioner, who is serving a life sentence, received 15 days in administrative confinement and 15 days of probation. Petitioner did not lose any gain time.[6] Courts have consistently determined that a prisoner's discipline in segregated confinement does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. <u>Sandin</u>, 515 U.S. at 486-487; <u>supra</u> at 13-14.   In <u>Matthews</u>, the Eleventh Circuit recently affirmed a district court's decision dismissing a procedural due process claim because the complaint did not allege a deprivation of a protected liberty interest and noted that the complaint did not allege any facts showing that the inmate was confined in harsher conditions than inmates in administrative confinement.   506 F. App'x at 983.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Petition for Writ of Habeas Corpus is **DISMISSED**, or in the alternative **DENIED.**

2.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

---

[6]The Court will not recommend sanctions against Petitioner for submitting under oath that he <u>did</u> lose 15 days of gain time.   The Court finds the mistake was not willful.   In fact, Petitioner consistently claimed, even before the State courts, that he lost 15 days of gain time.

-18-

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition writ of habeas has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __17th__ day of January, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: ALJ
Copies: All Parties of Record

-19-